

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

**PRICE DANIEL**
ATTORNEY GENERAL

September 20, 1949

Honorable L. P. Sturgeon, Director
Foundation School Program Act Division
State Auditor's Office
Austin, Texas       Opinion No. V-910

> Re: Transfer of scholastics
> between Texas and other
> states as affecting aver-
> age daily attendance for
> allocation of classroom
> teacher units under Art.
> III, S.B. 116, Acts 51st
> Leg., R.S., 1949.

Dear Sir:

Your request for an opinion relates to trans-
fer of scholastics between Texas and other states as
affecting average daily attendance upon which to allot
classroom teacher units as provided in S.B. 116, Acts
51st Leg., R.S., 1949. We quote the questions submit-
ted:

> "Is there a legal method whereby schol-
> astics may be transferred from the census
> rolls of one State to another? If not, is
> there a legal method by which the average
> daily attendance established by these chil-
> dren may be counted in determining eligibil-
> ity for classroom teacher units?"

Section 1 of Article VII of the Constitution
of Texas reads in part:

> "... it shall be the duty of the Leg-
> islature of the State to establish and make
> suitable provision for the support and main-
> tenance of an effecient system of public
> free schools."

Under this provision it is the mandatory duty
of the Legislature to make suitable provision for the

support and maintenance of public free schools. The legislative determination of the methods, restrictions, and limitations necessary to make the mandate effective is exclusive and final unless violative of the Constitution. Mumme v. Marrs, 120 Tex. 383, 40 S.W. 2d 31 (1931).

Section 3 of Article VII of the Constitution of Texas provides:

"... and all school districts may embrace parts of two or more counties, and the Legislature shall be authorized to pass laws for the assessment and collection of taxes in all said districts and for the management and control of the public school or schools of such districts...."

The property and funds of the public schools are held in trust by the district to be used for the benefit of the school children of the community or district in which the properties exist, or to which the school funds have been all allocated. In Love v. City of Dallas, 120 Tex. 351, 40 S.W.2d 20 (1931), it was said at page 27:

"Since the Constitution, Art. 7, Sec. 3, contemplates that districts shall be organized and taxes levied for the education of scholastics within the district, it is obvious that the education of non-resident scholastics is not within their ordinary functions. ..."

If authority for transfer of scholastics to the census rolls of Texas from another state exists, we think it must of necessity exist by virtue of enactments of the Legislature specifically providing therefor. The Legislature has passed a number of laws relating to transfer of scholastics from one district to another under certain described circumstances. These statutes are Articles 2678a, 2681, 2695-2699, and 2904a, V.C.S. These statutes prescribe no procedure and provide no authority for transfer of scholastics between Texas and other states. We think the statutes clearly contemplate transfers between districts in one or more counties within the State of Texas.

In 1931 the Legislature enacted a law authorizing the Governor to appoint a Commissioner to negotiate a compact, subject to approval of the Legislature, for the formation of state line school districts with New Mexico. Acts 42nd Leg., R.S., ch. 251, p. 418. Pursuant to this Act, the Commissioner was appointed and negotiated a compact which was approved and ratified. Acts 44th Leg., R.S., 1935, ch. 220, p. 516. The court, in the case cited below, in considering the validity of the compact, said:

> "Nowhere does the Texas Constitution authorize the State Legislature to form or create school districts embracing parts of two or more states...."

and held the compact invalid. The court recognized the maxim Expressio unius est exclusio alterius (the expression of one thing is exclusive of another) applied in Parks v. West, 102 Tex. 11, 111 S.W. 726 (1908), stating that this rule of construction has long been followed by the Texas courts. Texas-New Mexico School District No. 1 v. Farwell Independent School District, 184 S.W. 2d 642 (Tex. Civ. App., 1944). We think this rule applies to the questions submitted. The Legislature not having provided for transfer of scholastics between Texas and other states, it follows that transfers may not be legally made.

Further, we think the general census statutes, Articles 2816-2822, V.C.S., clearly contemplate census rolls containing the names of residents of the respective districts within the State of Texas.

Article 2816, V.C.S., provides in part:

> "... the census trustee ... shall take a census of all the children ... who are residents of the school district...."

Manifestly, a scholastic, in order to be included in the census, must be a resident of some school district in Texas. In Love v. City of Dallas, supra, the court said at page 23:

> "It is clear, we think, from a consideration of the various transfer statutes ... that scholastics cannot be transferred under

> any circumstances, from the district in
> which they reside to another district, ex-
> cept under the transfer statutes."

There is no provision for transfer of schol-
astics to or from the census rolls of Texas from or to
the rolls of another state.

However, Article 2699a, V.C.S., reads in part:

> "Any child who would be entitled to
> attend the public school of any district
> that lies on the border of Louisiana, Ar-
> kansas, Oklahoma and New Mexico, and who
> may find it more convenient to attend the
> public school in a district of a County of
> said State contiguous to said district in
> Texas, may have the State and County per
> capita apportionment of the Available School
> Fund paid to said district in said State and
> may have additional tuition, if necessary,
> paid by the district of his residence on
> such terms as may be agreed upon between the
> trustees of the receiving district and the
> trustees of the district of residence of
> such child,...."

This statute provides a method by which a
resident scholastic of Texas may attend school in a
district of a county of another state contiguous to
the district of residence and have per capita and tui-
tion paid to the receiving district, but does not au-
thorize the Comptroller to draw warrants in distribution
of the State's Available School Fund payable to school
districts of other states contiguous to Texas. At-
torney General's Opinion No. 0-5805. The statute con-
templates an agreement between the Texas district
and the contiguous out-of-state district under which
the Texas district pays the amount (including, but not
limited to, per capita apportionment received from the
State and county) agreed upon to the out-of-state dis-
trict. Attorney General's Opinion No. 0-6332.

It appears that Article 2699a, supra, pro-
vides the only method by which a Texas scholastic may
attend an out-of-state school. Specific provision is
not made for out-of-state pupils to attend Texas
schools. In <u>Love v. City of Dallas</u>, supra, it was

observed that the Legislature is without power to re-
quire school districts to receive non-resident schol-
astics without just compensation. Non-residents there
referred to were residents of Texas. Undoubtedly the
rule applies with peculiar force to non-residents of
Texas. However, it was pointed out that:

"... in view of the long operation of
the transfer statutes, we believe that where
a school district has facilities and teach-
ers in excess of those necessary for its
own scholastics, the state has the power to
require it, to accept transfers from another
district, but only upon the payment of rea-
sonable compensation therefor...."

We conclude that scholastics may not be trans-
ferred to or from the census rolls of Texas from or to
those of other states since such pupils do not come with-
in the general transfer statutes.

Admission to Texas schools on the same basis
upon which Texas scholastics may attend schools of ad-
joining states as provided in Art. 2699a, supra, is a
matter addressing itself to the discretion of local
boards involved. It is our opinion that if they are
admitted, just compensation must be provided by the
out-of-state district of residence. In Love v. City
of Dallas, supra, it was said at page 30:

"... a sound discretion is left to the
local school boards to determine whether ...
the admission of non-resident scholastics
will be prejudicial to the scholastics of
their districts and whether ... the statutory
fee would be compensatory ... control of our
public schools has always been vested in
local boards ... discretion to be exercised
by the local boards will not be disturbed by
the courts, except in cases of manifest
abuse."

As has already been pointed out, the court in
this case was considering scholastics who were resi-
dents of Texas; but we think, considering pertinent
statutes, that local boards have similar power to ex-
clude or admit non-residents of Texas.

We do not consider the rule expressio unius, supra, applicable to deny districts the right to receive pupils from adjoining states under Art. 2699a, supra, as its application would not assist in determining and giving effect to legislative intent. 39 Tex. Jur. 190, Statutes, Sec. 100, and cases there cited.

Section 5 of Article VII of the Constitution of Texas reads in part:

"... the available school fund herein provided shall be distributed to the several counties according to their scholastic population...."

Article 2665, V.C.S., provides for apportionment of the Fund pursuant to the Constitution and contains much of the language of Section 5 of Article VII, supra. Thus it is apparent that per capita apportionment may not be paid districts for scholastics residing in other states and attending schools in Texas. Proper charge, therefore, sufficient to cover the cost of instruction must be made by the Texas district.

Since the cost of instruction must be provided by the sending district, we conclude scholastics from other states attending Texas schools should not, and could not legally, be counted in establishing average daily attendance for determining allocation of classroom teacher units. However, we think average daily attendance established by Texas scholastics attending schools of other states may be taken into account in allocating classroom teacher units to the district of residence.

This conclusion is reached as a necessary inference from the intent of the Gilmer-Aikin Acts and Article 2699a, V.C.S. The latter statute provides that any child residing in a district adjoining another state who finds it more convenient to attend school in a district of a county of the adjoining state contiguous to the Texas district may do so and have his proportionate share of State and county available funds, plus necessary tuition, paid to the out-of-state district by the district of residence. The Texas district has the responsibility of educating the child and average daily attendance established by each child residing in the district should be considered by the State Commissioner of Education in determining the total funds necessary to provide a foundation school program in the

district, regardless of where such child actually attends school. Otherwise, the amount of foundation school funds for which the district is eligible would be reduced and the district financially penalized. Similarly, average daily attendance established by a child attending school in an out-of-state district should be counted in allocating classroom teacher units to the district in order to provide adequate teachers for any out-of-state students that may attend schools of the district where the cost of instruction is paid to the district by the out-of-state district of residence.

Power of the Legislature to provide by general law for transfer of scholastics to or from Texas from or to districts of other states contiguous to Texas districts and count average daily attendance established by such transferees attending Texas public schools is not before us for determination and we express no opinion with regard thereto.

## SUMMARY

Scholastics may not be transferred between Texas and other states, and average daily attendance established by non-resident pupils in attendance at Texas public schools may not be considered in determining allocation of classroom teacher units, but average daily attendance established by Texas scholastics attending schools of other states may be counted in allocating classroom teacher units to the district of residence. (Construing Arts. 2695-2699a, and related statutes and provisions of the Constitution of Texas as affecting application of Subsection (1) of Section 1, Art. III, S.B. 116, Acts 51st Leg., R.S., 1949.)

Very truly yours

APPROVED:

ATTORNEY GENERAL OF TEXAS

By

*Greenhill*

Everett Hutchinson

FIRST ASSISTANT
ATTORNEY GENERAL

Assistant

EH:db